| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Steven P. Chang 221783<br>Law Offices of Steven P. Chang<br>801 S. Garfield Ave., Suite 338<br>Alhambra, CA 91801-4486<br>(626) 281-1232<br>(626) 281-2919<br><br>☒ Attorney for | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>Harikrishna Investment Inc.<br><br>Debtor(s). | CASE NO.: 11-32540WJ<br>CHAPTER: 11<br>ADV. NO.: |
|---|---|

## ELECTRONIC FILING DECLARATION
## (CORPORATION/PARTNERSHIP)

☐ Petition, statement of affairs, schedules or lists    Date Filed:

☐ Amendments to the petition, statement of affairs, schedules or lists    Date Filed:

☒ Other: *Emergency Cash collateral*    Date Filed: 7/12/2011

### PART I - DECLARATION OF AUTHORIZED SIGNATORY OF DEBTOR OR OTHER PARTY

I, the undersigned, hereby declare under penalty of perjury that: (1) I have been authorized by the Debtor or other party on whose behalf the above-referenced document is being filed (Filing Party) to sign and to file, on behalf of the Filing Party, the above-referenced document being filed electronically (Filed Document); (2) I have read and understand the Filed Document; (3) the information provided in the Filed Document is true, correct and complete; (4) the "/s/," followed by my name, on the signature lines for the Filing Party in the Filed Document serves as my signature on behalf of the Filing Party and denotes the making of such declarations, requests, statements, verifications and certifications by me and by the Filing Party to the same extent and effect as my actual signature on such signature lines; (5) I have actually signed a true and correct hard copy of the Filed Document in such places on behalf of the Filing Party and provided the executed hard copy of the Filed Document to the Filing Party's attorney; and (6) I, on behalf of the Filing Party, have authorized the Filing Party's attorney to file the electronic version of the Filed Document and this Declaration with the United States Bankruptcy Court for the Central District of California.

_____    _____7/12/2011_____
Signature of Authorized Signatory of Filing Party    Date

Mahendra R. Patel, as its President
Printed Name of Authorized Signatory of Filing Party

President
Title of Authorized Signatory of Filing Party

### PART II - DECLARATION OF ATTORNEY FOR FILING PARTY

I, the undersigned Attorney for the Filing Party, hereby declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the Attorney for the Filing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) an authorized signatory of the Filing Party signed the Declaration of Authorized Signatory of Debtor or Other Party before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct hard copy of the Filed Document in the locations that are indicated by "/s/,"followed by my name, and have obtained the signature of the authorized signatory of the Filing Party in the locations that are indicated by "/s/," followed by the name of the Filing Party's authorized signatory, on the true and correct hard copy of the Filed Document; (4) I shall maintain the executed originals of this Declaration, the Declaration of Authorized Signatory of Debtor or Other Party, and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this Declaration, the Declaration of Authorized Signatory of Debtor or Other Party, and the Filed Document available for review upon request of the Court or other parties.

_____    _____7/12/2011_____
Signature of Attorney for Signing Party    Date

Steven P. Chang
Printed Name of Attorney for Signing Party

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*November 2006*

1  Steven P. Chang (CA State Bar No. 221783)
   Connie Y. Chou (CA State Bar No. 230910)
2  LAW OFFICES OF STEVEN P. CHANG
   810 South Garfield Avenue
3  Suite 338
   Alhambra, CA 91801-4486
4  Telephone: (626) 281-1232
   Fax: (626) 281-2919
5  Email: schang@spclawoffice.com

6
   (Proposed) Bankruptcy Counsel for Harikrishna Investment, Inc.,
7  Debtor and Debtor in Possession

8

9

10                    **UNITED STATES BANKRUPTCY COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

12

13  In re                                  Case No.  6: 11-BK-32540 WJ

14  Harikrishna Investment, Inc.,          Chapter 11

15            Debtor.                       **DEBTOR'S EMERGENCY MOTION
                                            PURSUANT TO SECTION 363(c) OF THE
16                                          BANKRUPTCY CODE AND RULE 4001(b)
                                            OF THE FEDERAL RULES OF
17                                          BANKRUPTCY PROCEDURE FOR
                                            INTERIM AND FINAL ORDERS
18                                          AUTHORIZING USE OF CASH
                                            COLLATERAL; MEMORANDUM OF
19                                          POINTS AND AUTHORITIES;
                                            DECLARATION OF MAHENDRA PATEL IN
20                                          SUPPORT THEREOF**

21                                          **OMNIBUS DECLARATION OF
                                            MAHENDRA PATEL IN SUPPORT OF
22                                          "FIRST DAY MOTIONS" FILED
                                            CONCURRENTLY HEREWITH**

23

24

25

26
        **TO THE HONORABLE WAYNE JOHNSON, UNITED STATES BANKRUPTCY**
27
    **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS**
28

1  OF RECORD HOLDING CASH COLLATERAL, THE TWENTY LARGEST

2  UNSECURED PARTIES, AND INTERESTED PARTIES:

3                          **EMERGENCY MOTION**

4            Through this Emergency Motion for Interim and Final Orders Authorizing

5  Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and Rule

6  4001(b) of the Federal Rules of Bankruptcy Procedure (this "Motion"), Harikrishna

7  Investment, Inc., the debtor and debtor in possession in the above-captioned case (the

8  "Debtor"), seeks the entry of interim and final orders authorizing the Debtor to use cash

9  collateral pursuant to 11 U.S.C. § 363(c)(2)(B) and (c)(3) and Rule 4001(b)(2) of the

10  Federal Rules of Bankruptcy Procedure.  This Motion is brought in accordance with Local

11  Bankruptcy Rule 2081-1(c).

12            This Motion is made and based upon the moving papers, the attached

13  Memorandum of Points and Authorities and the concurrently filed Omnibus Declaration of

14  Manhendra Patel and the arguments and representations of counsel and any oral or

15  documentary evidence presented at the time of the hearing.

16       **WHEREFORE** the Debtor respectfully requests that the Court enter an order:

17                 (1)    granting this Motion;

18                 (2)    authorizing the use of cash collateral pursuant to 11 U.S.C. §

19  363(c)(2)(B) and (c)(3) and Rule 4001(b)(2) of the Federal Rules of Bankruptcy

20  Procedure; and

21                 (3)    granting such other and further relief as this Court deems just and

22                         proper under the circumstances.

23  DATED:  July 12, 2011              Law Office of Steven P. Chang

24

25

26                         By: /s/Steven P. Chang_____
                               Steven P. Chang
27                             Bankruptcy Counsel for Harikrishna
                               Investment, Inc., Debtor and Debtor in
28                             Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND SUMMARY OF RELIEF REQUESTED

This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. By this Motion, the Debtor seeks authority to use cash collateral to pay its ordinary and necessary operating expenses, which include payroll for three full time employees, rent for its facility, utility bills and insurance premiums, the payment of certain vendors, the payment of quarterly fees due to the Office of the United States Trustee and other necessary operating expenses (collectively, the "Operating Expenses"). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 363(c)(2)(B) and (c)(3) under which the Debtor seeks authority to use cash collateral.

## II.

## PRELIMINARY STATEMENT, BACKGROUND AND NEED FOR HEARING ON AN EMERGENCY BASIS

Harikrishna Investment, Inc. (the "Debtor"), commenced this case by filing a voluntary chapter 11 petition on July 12, 2011 (the "Petition Date"). The reason for the filing was due to the Lawsuit commenced by Cathay Bank v. Harikrishna Investment, Inc. which puts Debtor into default based on a 20 or so days of delay in a single mortgage payment. In the same lawsuit, Cathay Bank also used default of one of the Shareholder as basis to put Debtor's loan with Cathay Bank in default. As a result of the lawsuit, Cathay Bank was able to obtain appointment of receivership Stephen Post which facilitated the need of this Bankruptcy filing. Upon return by the Receiver of control Debtor intends to continue to manage and operate the business on a regular basis as a debtor in possession as the business is solvent and draws positive cash flow to meet its obligations. By this Motion, the Debtor seeks authority from the Court to use cash collateral to pay the ordinary and necessary expenses and generally operate the

1  business.  The Debtor's immediate access to cash is absolutely critical to paying its

2  operating expenses, which include payroll for three full time employees, rent for its

3  facility, utility bills and insurance premiums, the payment of certain vendors, the payment

4  of quarterly fees owed to the Office of the United States Trustee and other necessary

5  operating expenses (collectively, the "Operating Expenses").

6         The Debtor is engaged in the business of Hospitality specifically, running a

7  Hotel as a Franchisee of Holiday Inn Express.  The Debtor requires the use of cash

8  collateral to maintain its operations, pay the Operating Expenses and amounts due under

9  loan documents, security agreements and promissory notes to lenders with security

10  interests in the Debtor's accounts receivable, inventory and other assets.  In order to

11  maintain operations without disruption thereby preserving the value of the estate, the

12  Debtor must be permitted to pay in the ordinary course its Operating Expenses needed

13  for operating of its electrical contracting business and the secured lenders holding cash

14  collateral.  As such, a hearing on an emergency basis is required and appropriate.

15  A. **The Secured Creditors and the Debtor's Assets**

16         The Debtor has Two secured creditors holding cash collateral, Cathay Bank

17  and Vendor Capital Group.

18         1.    Cathay Bank Loan.

19         The terms of the Cathay Bank Loan ("Cathay Bank Loan") are as follows:

20  (1) Loan made January 27, 2006 in the amount of $3,350,000, loan no. 119200039, (2)

21  variable interest rate of 7.00%, (3) no payments due until maturity, (4) current Maturity

22  Date of February 1, 2015.  The Cathay Bank Loan was evidenced and secured by a

23  Business Loan Agreement, Promissory Note, Commercial Security Agreement,

24  Commercial Guaranties issued by Mahendra Patel, a Deed of Trust, an Assignment of

25  Rents and Disbursement Request and Authorization (collectively, the "Cathay Bank Loan

26  Documents"). True and correct copies of the Cathay Bank Loan Documents are attached

27  as Exhibit 1 to the Omnibus Declaration of Mahendra Patel in Support of First Day

28  Motions ("Patel Declaration").

1    Pursuant to the terms of the Cathay Bank Loan Documents, the Cathay

2 Bank Loan is secured by, among other things, all of the Debtor's accounts receivable.

3 The Cathay Bank Loan is further secured by all of the Debtor's assets, including office

4 equipment and inventory, and is further evidenced and secured by a deed of trust against

5 the premises where the Debtor's business is located at 480 S. Redlands, Perris, CA

6 92507, as well as personal guaranties from three of the shareholders.  The loan balance,

7 as of the filing, is approximately $2,856,000.

8    Most relevant to this Motion, the collateral for the Cathay Bank Loan

9 includes a security interest in the Real Property commonly known as 480 S. Redland

10 Ave., Perris, CA 92507.  As of the Petition Date the Real Property is valued in excess of

11 $5,500,000.00.  Given the value of the real property as of the Petition Date, there is an

12 equity cushion of over 92.58% with regard to the Debtor's accounts receivables, thus

13 affording Cathay Bank substantial adequate protection in the value of its collateral.

14    Moreover, the interest of Cathay Bank is afforded further adequate

15 protection as a result of its security interest in the Debtor's other assets, including office

16 equipment and inventory.  The added security in personal business assets will afford

17 Cathay Bank additional protection.  The value of real property alone is sufficient to

18 provide Cathay Bank with more than adequate protection for its secured claim.

19    2.    Vendor Capital Group

20    The terms of the Vendor Capital Group Lease Purchase Agreement ("VCG

21 Lease") are as follows: (1) Lease made September 11, 2007 for 60 months with monthly

22 lease payment amount of $4,793.44 in the amount of $223,013.86, lease no. 2020-001 &

23 002, (2) optional end of lease buy our at end of lease for $101.00, (3) current Maturity

24 Date of September 11, 2012.  The VCG Lease was evidenced and secured by an

25 Equpment Lease Schedule No. 2020-001 and 002, a Guaranties issued by Mahendra

26 Patel, (collectively, the "VCG Lease Documents").  True and correct copies of the VCG

27 Lease Documents are attached as Exhibit 1 to the Omnibus Declaration of Mahendra

28 Patel in Support of First Day Motions ("Patel Declaration").

1    Pursuant to the terms of the VCG Lease Documents, the VCG Lease is

2   secured by, among other things, all of the Debtor's leased gods and proceeds thereof.

3   The loan balance, as of the filing, is approximately $100,000.

4    Most relevant to this Motion, the collateral for the VCG Lease includes a

5   security interest in many of the furniture used at the business location including desk,

6   nightstands, and various other needed furniture.  As of the Petition Date the leased

7   furniture is worth approximately $100,000.00.

8

9   B.  **The Debtor's Business and Adequate Protection**

10    The Debtor is engaged in the Hospitality business operating a Hotel as a

11   Franchisee of Holiday Inn Express. The Debtor, prior to receiver appointment in or about

12   May 2011, has been able to meet all of its obligations and is running a positive cash flow

13   budget.  Upon filing of this Chapter 11 and the return of business operation by the

14   receiver, the Debtor anticipates that it will increase its business operations for the busier

15   summer traveling month. Thus, at the current time, the Debtor's anticipated expenses are

16   quite low in comparison to its previous levels.

17    As stated above, the value of the accounts receivable as of the Petition

18   Date provides Cathay Bank with an equity cushion of over 92.58% with regard to the

19   Debtor's real property, thus affording Cathay Bank substantial adequate protection in the

20   value of its collateral.  Moreover, Cathay Bank is further adequately protected by its

21   security interest in the Debtor's inventory and other assets. As discussed below, the

22   substantial equity cushion alone provides the Secured Creditor with adequate protection

23   for the use of cash collateral requested pursuant to this Motion.

24    Pending a final hearing on the Motion, the Debtor requests emergency

25   authority to use cash collateral in accordance with the budget (the "Budget") attached

26   hereto as Exhibit 1.[1]

27   _____

28

C. **Unsecured Debt**

       The Debtor's total amount of unsecured priority debt is $131.23 and the amount of the Debtor's total nonpriority debt in this case is $2,339,695.15 (with an insider loan of $2,250,000.00) thus, Debtor has very minimal unsecured debts.

D. **Debtor's Operating/Cash Collateral Budget**

       Attached hereto as <u>Exhibit 1</u>, is the Debtor's proposed cash collateral/operating budget (the "Budget"), which was prepared by Mahendra Patel, President of the Debtor. All payments described in the Budget, are necessary to maintain and continue the Debtor's operations and preserve its electrical contracting business for the benefit of the Debtor's creditors and the estate. Failure to make payment in accordance with the Budget could result in immediate and irreparable harm to the Debtor's operations, including loss of valuable employees, and diminution in the Debtor's assets, and thus to the Debtor's bankruptcy estate, to the detriment of its creditors, including specifically causing diminution in the value of Cathay Bank and VCG's collateral interests, as the Debtor will not be able to operate its business, successfully attract large travel groups and generate future accounts receivable through its marketing efforts.

III.

**NO CASH COLLATERAL AGREEMENT WITH CATHAY BANK AND VCG; NEED FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**

       The Debtor will be commencing negotiations with Cathay Bank and VCG, but it was impractical for the Debtor to do so pre-petition. Therefore, the Debtor makes this Motion pursuant to and Rule 4001(b) for an order authorizing it to use cash collateral. The Debtor will request permanent use of cash collateral at the Final Hearing on this Motion.

IV.

**REQUEST FOR USE OF CASH COLLATERAL**

1    The Debtor requests (i) pending a final hearing, emergency authority to use

2  cash collateral to satisfy administrative expenses (including payments under the Cathay

3  Bank Loan Documents, VCG Lease Documents, the payment of the Operating

4  Expenses, including wages[2]) in accordance with the Budget and (ii) at the final hearing,

5  final authority to use cash collateral through November 11, 2011.  The Debtor also

6  requests some flexibility in connection with the Budget:  it requests authority to exceed

7  the disbursements forecasted in the Budget by up to 15% on a line-by-line basis, and to

8  exceed aggregate disbursements forecasted in the Budget by a total of 10%.  Absent

9  emergency interim relief, the Debtor will not be able to timely make payments to Cathay

10  Bank and VCG, satisfy its Operating Expenses, or to otherwise operate its business.

11  **V.**

12  **ARGUMENTS AND AUTHORITIES**

13    A.    **The Relief Requested is Authorized by 11 U.S.C. § 363**

14    Section 363 of the Bankruptcy Code governs the Debtor's use of property of

15  its estate.  Section 363(c)(1) provides in pertinent part that:

16    If the business of the debtor is authorized to be operated
under section . . . 1108 . . . and unless the court orders
17    otherwise, the trustee may enter into transactions, including
the sale or lease of property of the estate, in the ordinary
18    course of business, without notice or a hearing, and may use
property of the estate in the ordinary course of business
19    without notice or a hearing.

20  11 U.S.C. § 363(c)(1).

21    A debtor in possession has all the rights and powers of a trustee with

22  respect to property of the estate, including the right to use property of the estate in

23  compliance with Section 363 of the Code.  11 U.S.C. § 1107(a).  Section 363(c)(2)

24  establishes a special requirement with respect to "cash collateral", by providing that the

25  trustee or debtor in possession may not use, sell or lease "cash collateral" under

26  _____

27    [2] Concurrently herewith, the Debtor has filed a Notice of Setting/Increasing Insider
Compensation.
28

1   subsection (c)(1) unless (i) such entity that has an interest in such collateral consents or

2   (ii) the court, after notice and a hearing, authorizes such use, sale or lease.

3              "Cash collateral" is defined by the Code as follows:

4              [C]ash, negotiable instruments, documents of title, securities,
               deposit accounts, or other cash equivalents whenever
5              acquired in which the estate and an entity other than the
               estate have an interest and includes the proceeds, products,
6              offspring, rents, or profits of property subject to a security
               interest as provided in section 552(b) of this title, whether
7              existing before or after the commencement of a case under
               this title.

8   11 U.S.C. § 363(a).

9              The definition of "cash collateral" set forth in Section 363(a) refers to

10  Section 552(b) of the Code, which provides:

11             Except as provided in sections 363, 506(c), 522, 544, 545,
12             547 and 548 of this title, if the debtor and an entity entered
               into a security agreement before the commencement of the
13             case and if the security interest created by such security
               agreement extends to property of the debtor acquired before
14             the commencement of the case and to proceeds, products,
               offspring, rents, or profits of such property, then such security
15             interest extends to such proceeds, products, offspring, rents
               or profits acquired by the estate after the commencement of
16             the case to the extent provided by such security agreement
               and by applicable non-bankruptcy law, except to the extent
17             that the court, after notice and a hearing and based on the
               equities of the case, orders otherwise.

18
19  11 U.S.C. § 552(b)(1).

20             The Court may determine, after notice and a hearing, that the interest of all

21  parties claiming an interest in the cash collateral are adequately protected.  See 11

22  U.S.C. §§§ 363(c)(2)(B), (c)(3) and (e).  It is universally acknowledged that the debtor's

23  cash "is the life blood of the business" and the bankruptcy court must assure that such

24  life's blood "is available for use even if to a limited extent".  In re Mickler, 9 B.R. 121, 123

25  (Bankr. M.D. Fla. 1981).  Courts typically authorize a debtor to use cash collateral to

26  continue its operations so long as the interests asserted by affected creditors in such

27  cash are adequately protected. There is no prejudice to Cathay Bank whose interest is

28  adequately protected by a very significant equity cushion.

1          B.    **Cathay Bank Has a Substantial Equity Cushion**

2                 As noted above, a debtor's authority to use cash collateral is typically

3    conditioned on providing "adequate protection" to entities that assert an interest in such

4    cash.  11 U.S.C. § 361.  The term "adequate protection" is not defined in the Bankruptcy

5    Code. In addition, neither Section 361 nor any other provision of the Code defines the

6    nature and extent of "interest in property" of which a secured creditor is entitled to

7    adequate protection under Section 363.  However, the statute plainly provides that a

8    qualifying interest demands protection only to the extent that the use of the creditor's

9    collateral will result in a decrease in "the value of such entity's interest in such property".

10   United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365,

11   108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

12               Timbers teaches that a secured creditor is entitled to "adequate protection"

13   only against the diminution in value of the collateral securing its allowed secured claim.

14   Where the value of Cathay Bank's collateral (accounts receivable) is not diminishing by

15   the Debtor's use of the cash collateral (in fact the use is preserving the collateral), it

16   follows that Cathay Bank's interests in cash collateral are adequately protected.

17   Moreover, separate and independent of any question of diminution in value, a secured

18   creditor has no right to preservation of the equity cushion in its collateral.  The Supreme

19   Court in Timbers determined that the property interest the Debtor must adequately

20   protect is the lien that secures the creditor's claim.   Timbers, 108 S. Ct. at 630.

21               The existence of an "equity cushion," (the value of the collateral in excess

22   of the amount of the secured claim), "is the classic form of protection for a secured debt."

23   Pistole v. Mellor (In re Mellor), 734 F.2d 1396, 1400 (9th Cir. 1984); accord, In re

24   Llewellyn, 27 B.R. 481 (Bankr. M.D. Pa. 1983); In re San Clemente Estates, 5 B.R. 605

25   (Bankr. S.D. Cal. 1980); In re Statbucker, 4 B.R. 251 (Bankr. D. Neb. 1980).  "[T]he

26   existence of an equity cushion, standing alone, can provide adequate protection." Mellor,

27   734 F.2d at 1400.

28

1    The Ninth Circuit Court of Appeals held that a 20% "equity cushion"

2    constituted adequate protection, as a matter of law. Id., at 1401.[3]  In determining the

3    extent of the equity cushion, most courts value the collateral on a going concern basis.

4    See, e.g., id.; In re Automatic Voting Machine Corp., 26 B.R. 970 (Bankr. W.D.N.Y.

5    1983); In re OPL Components, Inc., 20 B.R. 342 (Bankr. E.D.N.Y. 1982); In re Shockley

6    Forest Industries, Inc., 5 B.R. 160 (Bankr. N.D. Ga. 1980); In re Rogers Development

7    Corp., 2. B.R. 679 (Bankr. E.D. Va. 1980).

8    Using a very conservative valuation of the Debtor's real property, which, as

9    of the Petition Date, are valued at $5,500,000.00, Cathay Bank has a substantial equity

10    cushion with regard to the approximately $2,856,000 owed to it by the Debtor.  The

11    Debtor's Accounts Receivable Equity Cushion is equal to over 97% (excluding the value

12    of Cathay Bank's other collateral owned by the Debtor), which is substantially greater

13    than the acceptable 20% rate adhered to by the Ninth Circuit Court of Appeals.  The

14    actual equity cushion in this case is even higher when factoring in the inventory and other

15    assets held as security by Cathay Bank.

16    Applying the case law discussed above, it is clear that such equity cushion,

17    provides adequate protection of Cathay Bank's claims.  The equity cushion overrides the

18    effects of any minor variations that may occur between the Budget and the Debtor's

19    actual experience and thus provides adequate protection to Cathay Bank.  Cathay Bank's

20    interest in cash collateral is clearly adequately protected.  As such, pending a final

21    hearing, the Debtor requests emergency authority to use cash collateral according to the

22    Budget during the Interim Budget Period.

23

24

_____

25    [3] The Ninth Circuit Court of Appeals stated that a cushion of less than 20% constitutes adequate

26    protection and cited with approval authorities which have held that equity cushions of between 10% and
20% constituted adequate protection. Mellor, 734 F.2d at 1401, citing In re McGowan, 6 B.R. 241, 243

27    (Bankr. E.D. Va. 1980) (holding that a 10% cushion is sufficient adequate protection); In re Rogers
Development Corp., 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (equity cushion of approximately 15% to 20%

28    was adequate protection, even though the debtors had no equity in the property). See also, In re Hawaiian
Pacific Industries, 17 B.R. 670, 673 (Bankr. D. Hawaii 1982) 15% cushion constituted adequate protection).

1    Though, VCG does not enjoy the same equity cushion in its collateral, but

2  an assurance of ongoing monthly payment should be sufficient to protect a lessor's

3  interest.  Thus, VCG adequately protected and is not prejudiced.

4    C.    **In Determining Whether Cathay Bank and VCQ is Adequately**

5         **Protected, the Court Should Promote Reorganization**

6    It is well established that a bankruptcy court, where possible, should resolve

7  issues presented in favor of reorganization rather than to force a liquidation because the

8  business cannot use cash or other property to operate for a short time.  In re Dynaco

9  Corp., 162 B.R. 389 (Bankr. D. N.H. 1993); In re Hoffman, 51 B.R. 42 (Bankr. W.D. Ark.

10  1985); In re A&B Hearing & Air Conditioning, Inc., 48 B.R. 401 (Bankr. M.D. Fla. 1985); In

11  re Heatron, Inc., 6 B.R. 493 (Bankr. W.D. Mo. 1980).  As the Heatron court stated in

12  granting a debtor's motion to use cash collateral:

13         The policy of the Code, as was that of the predecessor
         statutes, is to encourage reorganization if there is a
14         reasonable possibility of success.  At the beginning of the
         reorganization process, the court must work with less
15         evidence than might be desirable and should resolve issues in
         favor of the reorganization, where the evidence is conflicting.
16
     Id., at 496.
17
       In In re O'Connor, 808 F.2d 1393 (10th Cir. 1987), the court eloquently
18
   summarized the foregoing principle as follows:
19
         Because the ultimate benefit to be achieved by a successful
20         reorganization inures to all the creditors of the estate, a fair
         opportunity must be given to the Debtor to achieve that end.
21         Thus, while interests of the secured creditor . . . are of
         concern to the court, the interests of all other creditors also
22         have bearing upon the question of whether use of cash
         collateral shall be permitted during the early stages of
23         administration.

24         The first effort of the court must be to insure the value of the
         collateral will be preserved.  Yet prior to confirmation for a
25         plan of reorganization, the test of that protection is not by the
         same measurements applied to treatment of a secured
26         creditor in a proposed plan.  In order to encourage the
         Debtor's efforts in the formative period prior to the proposal of
27         a reorganization, the court must be flexible in applying the
         adequate protection standard.

28

1  Id., at 1397-98.

2        This important sentiment is echoed in other cases.  In In re Prime, Inc., 15

3  B.R. 216, 218 (Bankr. W.D. Mo. 1981), the court succinctly stated that "[I]t is not the

4  purpose of a Chapter 11 proceeding to close a business at the beginning".  Similarly, in In

5  re Shockley Forest Industries, Inc., 5 B.R. 160, 162 (Bankr. N.D. Ga. 1980), the

6  bankruptcy court held "Chapter 11 is designed for the purpose of preventing dissolution

7  of an otherwise viable corporation.  A court should not precipitously sound the death knell

8  for a debtor by prematurely determining that the debtor's prospects for economic revival

9  are poor.  At this time the Court has no basis on which to conclude the debtor cannot be

10  rehabilitated."

11        The conclusion that preservation of value is sufficient, without more, to

12  provide adequate protection follows from the principle that a secured creditor is only

13  entitled to adequate protection of the secured creditor's interest in its collateral to the

14  extent that such collateral secured the creditors allowed claim.  See Timbers, 108 S.Ct. at

15  629-30.  Here, Cathay Bank is protected by a substantial equity cushion in the value of

16  the accounts receivable, if this Court authorizes its use of cash collateral as requested in

17  this Motion.  Moreover, the use of cash collateral will maximize value for creditors for the

18  Estate while protecting the interests of Cathay Bank and VCG in cash collateral.

19       D.  **Emergency Authority to Use Cash Collateral is Warranted Under**

20          **11 U.S.C. § 363(c)(3) and Rule 4001(b) to Allow the Debtor to**

21          **Operate its Business**

22        The Debtor has requested an emergency hearing to consider the relief

23  requested in this Motion.  Section 363(c)(3) and Rule 4001(b)2) require the Court to

24  schedule a cash collateral hearing in accordance with the needs of the debtor and

25  conduct a preliminary hearing for the purpose of authorizing the use of cash collateral to

26  the extent necessary to avoid irreparable harm to the Debtor.  Section 363(c)(3)

27  mandates that "[a]ny hearing [on the use of cash collateral] . . . shall be scheduled in

28

1  accordance with the needs of the debtor". The Ninth Circuit has recognized that

2  emergency relief is often crucial to the success of a corporate reorganization:

3            We realize that "in certain circumstances, the entire
          reorganization effort may be thwarted if emergency relief is
4            withheld" and that reorganization under the Bankruptcy Code
          "is a perilous process, seldom more so than at the outset of
5            the proceedings when the debtor is often without sufficient
          cash flow to fund essential business operations". It is for this
6            very reason that Congress specified that hearings concerning
          the use of cash collateral "shall be scheduled in accordance
7            with the needs of the debtor". 11 U.S.C. § 363(c)(3).

8  In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985) (citations omitted).

9            In the present case, emergency use of cash collateral by the Debtor,

10  pending a final hearing, is necessary to prevent immediate and irreparable harm to the

11  Debtor and its creditors. Absent such use, the Debtor will have little or no funds from

12  which to conduct its operations, and may be forced to permanently discontinue its

13  business and not be able to pursue its accounts receivable, all to the detriment of all

14  creditors, current employees .

15            On the other hand, Cathay Bank and VCG will suffer no harm if interim

16  relief is granted. To the extent that Cathay Bank has an interest in property of the Estate

17  which is worthy of adequate protection, that interest is adequately protected by the

18  preservation of the value of their collateral (the substantial equity cushion in the value of

19  the accounts receivable) through the Debtor's continued operations.

20            As such, the Debtor requests that the Court permit the Debtor to use cash

21  collateral to the extent necessary to avoid irreparable harm pending a final hearing in

22  accordance with the Budget, schedule a final hearing on this Motion under Rule

23  4001(b)(2), following the final hearing authorizing the Debtor to use cash collateral in

24  order to pay its ordinary and necessary operating expenses and generally operate the

25  business for the next four months in accordance with the Budget, but only to the extent

26  that (a) Cathay Bank's and VCG's security interest  is valid, enforceable, properly

27  perfected, and unavoidable, and (b) the Debtor's use of cash collateral results in

28  diminution in the value of Cathay Bank's and VCG's cash collateral.

## VI.

## __NOTICE__

The Debtor intends to provide notice of this Motion by overnight mail, e-mail, facsimile, or hand delivery on (i) the Office of the United States Trustee, (ii) the twenty largest unsecured creditors, (iii) all secured creditors, including Cathay Bank and VCG, and (iv) any party requesting special notice.

## VII.

## __CONCLUSION__

Based on the foregoing, the Debtor respectfully requests that the Motion be granted in all respects, and for such other and further relief as the Court deems just and proper.


DATED: July 12, 2011                    Law Office of Steven P. Chang



                                        By: /s/Steven P. Chang_____
                                            Steven P. Chang
                                            Bankruptcy Counsel for Harikrishna Inc.,
                                            Debtor and Debtor in Possession

# **EXHIBIT 1**

## CASH COLLATERAL BUDGET

The following are the Debtor's Monthly Expenditures and Proposed Budget

Wages

Approximately $22,000.00/per month

Utilities

| | |
|---|---|
| Telepacific Phone | $800.00 |
| Southern California Edison (electric) | $2,500.00 |
| Water | $3,000.00 |
| Trash | $236.00 |

Insurance

| | |
|---|---|
| General Liability, Vehicle, Building and Umbrella Policy | $1100.00 |

Building Mortgage

| | |
|---|---|
| Mortgage for business premises | $26,171.02 |

Lease

| | |
|---|---|
| Property management system | $1,346.86 |
| Furniture (Vendor Capital Group) | $7,651.54 |

| | |
|---|---|
| TOTAL | $64,805.42 |

## DECLARATION OF MAHENDRA PATEL

I, Mahendra Patel, declare:

1.   I am employed by Harikrishna Investment, Inc., the debtor and debtor-in-possession ("Debtor") as the President/bookkeeper.

2.   As part of my employment, I am very familiar with the books and records of the

3.   Debtor, including the amount and value of the Debtor's real property.  The current estimated value of the Real Property commonly known as 480 S. Redland Ave., Perris, CA 92507 is at least $5,500,000.00.

4.   I have prepared the proposed budget and believe the budget is a reasonable reflection of the necessary expenses.

5.   I have read and understood the attached Emergency Motion For Order Seeking Interim and Final Orders regarding Cash Collateral and have no objection to the Motion or the Debtor's use of cash collateral.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this   12th day of July, 2011, at Riverside, California.

_____/s/ Mahendra Patel_____
Mahendra Patel, President

_____

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 801 S. Garfield Ave., Suite 338, Alhambra, CA 91801.

On July 12, 2011, I served the following document(s) described as **DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MAHENDRA PATEL IN SUPPORT THEREOF**

**OMNIBUS DECLARATION OF MAHENDRA PATEL IN SUPPORT OF "FIRST DAY MOTIONS" FILED CONCURRENTLY HEREWITH**

in a sealed envelope addressed as follows:

**CREDITORS**

| | |
|---|---|
| Ace Floor Care<br>21910 Orange St<br>Perris, CA 92570 | Always Reliable Pool & Spa Service<br>30580 Stern Drive<br>Menifee, CA 92584 |
| American Express<br>PO BOX 981537<br>El Paso, TX 79998 | American Hotel Register Company<br>16458 Collections Center Dr<br>Chicago, IL 60693 |
| Amtech Elevator Services<br>Dept LA 21592<br>Pasadena, CA 91185 | Capital One<br>PO BOX 30281<br>Salt Lake City, UT 84130 |
| Cathay Bank<br>9650 Flair Drive 3rd Floor<br>El Monte, CA 91731 | City Of Perris<br>101 North D Street<br>Perris, CA 92570 |
| Cleansource Commerce<br>5635 Union Pacific Ave<br>Commerce, CA 90022 | Cr&R Incorporated<br>PO BOX 206<br>Stanton, CA 90680 |
| DC Electronics<br>1772 Container Circle<br>Riverside, CA 92509 | Direct TV<br>PO BOX 60036<br>Los Angeles, CA 90060 |
| Discover Discounts<br>PO Box 3016<br>New Albany, IN 43054 | EDD<br>PO BOX 826218<br>Sacramento, CA 94230 |
| Edison<br>PO BOX 300<br>Rosemead, CA 91772 | Fantasy Pool Service<br>PO BOX 223<br>San Jacinto, CA 92581 |

| | |
|---|---|
| Farmers<br>PO BOX 894731<br>Los Angeles, CA 90189 | Franchise Tax Board<br>PO BOX 2952<br>Sacramento, CA 95812 |
| Gms Elevator Service<br>446 W Arrow Hwy #30<br>San Dimas, CA 91773 | Hd Supply Facilities Maintenance<br>PO BOX 509058<br>San Diego, CA 92150 |
| Intercontinental Hotel Group<br>3 Ravinia Dr<br>Atlanta, GA 30346 | Juan Thomas<br>10363 Bonita Ave<br>Riverside, CA 92505 |
| Key Equipment's Finance<br>11030 Circle Point Rd 2nd Fl<br>Westminister, CO 80020 | Mahendra Patel<br>19697 Shadow Brook Way<br>Riverside, CA 92508 |
| Micros Systems Inc<br>PO BOX 23747<br>Baltimore, MD 21203 | Playnetwork Inc<br>8727 148th Ave Ne<br>Redmond, WA 98052 |
| Quick Badge & Sign Inc<br>PO BOX 468<br>Gresham, OR 97030 | Southern Ca Edison<br>PO BOX 9004<br>San Dimas, CA 91773 |
| The Press Enterprise<br>PO BOX 12006<br>Riverside, CA 92502 | TLC Capital<br>PO BOX 890115<br>Charlotte, NC 28289 |
| US Food Services<br>Los Angeles, CA 90017 | Vender Capital Group<br>PO BOX 27867<br>Raleigh, NC 27867 |
| Vendor Capital Group<br>4191 Fayetteville Road<br>Raleigh, NC 27611 | Verizon<br>PO BOX 920041<br>Dallas, TX 75392 |

**US TRUSTEE**

United States Trustee
3685 Main St. Suite 300
Riverside, CA 92501

**US Bankruptcy Judge**
Honorable Wayne Johnson
3420 Twelfth Street, Suite 345
Riverside, CA 92501-3819

(x)    (BY MAIL) As follows: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited

ii

with the U.S. postal service on that same day with postage thereon fully paid at Alhambra, California in the ordinary course of business.  I am aware of that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day of deposit for mailing in affidavit.

( )      (BY FACSIMILE)     A true copy thereof by facsimile, conforming copy by mail

( )      (BY PERSONAL SERVICE) I caused the above referenced document to be served via personal delivery at the above referenced address.

Executed on July 12, 2011, at Alhambra, California.

( )     (State)I declare under penalty of perjury under the laws of the State of CALIFORNIA that the foregoing is true and correct.

(X)      (Federal)I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


                            /s/Michelle Yang
                            Michelle Yang